IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER O. OBAZUAYE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 14 C 08605 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| ILLINOIS DEPARTMENT OF HUMAN | ) |
| SERVICES, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Peter O. Obazuaye filed suit against his employer, Illinois Department of Human Services (DHS), alleging multiple violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 *et seq.*, including discrimination based on gender (count one) and national origin (count two), discrimination based on a hostile work environment (counts one and two), and retaliation for complaining about the alleged discrimination (count three).[1] DHS moves for summary judgment on all claims. (Dkt. 39.) For the reasons stated below, the motion is granted.

## BACKGROUND[2]

Obazuaye, a Nigerian-American man, began working as a registered nurse at the Illinois

---

[1] The court's jurisdiction rests on 42 U.S.C. § 2000e-5(f)(3). Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391.

[2] Unless otherwise noted, the facts in this section are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

Center for Rehabilitation and Education on Roosevelt Avenue (ICRE-Roosevelt) in March 2013. ICRE-Roosevelt is a medical facility that provides transition training to young adults with physical disabilities, "students" who reside at the facility during the week. At ICRE-Roosevelt, there are two levels of registered nurses: Registered Nurse I (RN-I) and Registered Nurse II (RN-II), with RN-IIs having additional duties including making assignments and acting as a point of contact for doctors and students' families. During all relevant times, Obazuaye was an RN-I.[3]

Nurses work one of three shifts at ICRE-Roosevelt—day, p.m., and night. Each shift is required to have an RN-II on duty. When Obazuaye began working at ICRE-Roosevelt, however, a shortage of RN-IIs had left no RN-II on the day shift. Instead, an RN-I was temporarily assigned (TA[4]) into the position each day. The governing union contract states that the employer should "attempt to . . . distribute such [temporary] assignments . . . giving due consideration to seniority, providing that senior employees have the qualifications and ability to perform the required work." (Dkt. 41-1 at 166.)

The two main duties of all nurses at ICRE-Roosevelt are to provide medication and assist in the students' educational process. As part of these duties, nurses are required to provide information for case management reports for the students assigned to them.[5] In addition, nurses teach health and wellness classes to the students.

Between March and June 2013, Obazuaye worked the day shift, from 6:00 a.m. to 2:00 p.m. In or around August or September 2013, Obazuaye went on a flex-time schedule,

---

[3] Since the time-period during which the activities that form the basis of this suit took place, Obazuaye has received a promotion to RN-II at a different ICRE facility.

[4] "TA" is used interchangeably by the parties and the court to mean "temporarily assign(ed)" and "temporary assignment."

[5] The information is submitted to the Director of Nursing (Florence O'Leary at that time), who compiles the information into a composite report for use of social workers at the facility.

which shifted his working hours to 9:00 a.m. to 5:00 p.m. He stayed on this flex-time schedule until approximately January 2014.

Obazuaye makes numerous complaints about his employment at ICRE-Roosevelt. First, he complains about how the TA for the RN-II on the day shift was filled (the TA issue). The most senior qualified RN-I on the day shift, Ora Simpson-Brown, would regularly take the TA, although on days that Simpson-Brown was not working Obazuaye would get the TA instead. Obazuaye alleges that his supervisor, Florence O'Leary, told him that Simpson-Brown got preference because she was "more qualified" and "the students understood her better." DHS, on the other hand, states, that the TA position was filled based on seniority, which would have correctly preferenced Simpson-Brown. In any case, Obazuaye believed the TA should be assigned by rotation among the RN-Is on the day shift, rather than always being offered to Simpson-Brown first. He brought his concerns to O'Leary, and up the management chain at ICRE-Roosevelt, meeting with Therese Manderino, the superintendent of the facility, and Ben Davis, the facility's HR Specialist, in January 2014. Obazuaye filed a union grievance on January 23, 2014, which resulted in ICRE-Roosevelt's posting a job opening for a permanent RN-II on the day shift.

That same day, Obazuaye also filed a complaint with the Illinois Governor's Office of Executive Inspector General in which he claimed that O'Leary had discriminated against him by not regularly rotating him into the RN-II TA and by not posting the position to be permanently filled.

Obazuaye applied for the RN-II position when it was posted, but it was awarded to another RN-I nurse, Eden Soco, who had more seniority than Obazuaye. Obazuaye complains about being passed over for that promotion as well.

3

Next, Obazuaye complains that O'Leary expected him to submit case management report information electronically, whereas other nurses were permitted to fill out paper forms (the report issue). Obazuaye also complains about having to regularly teach a health and wellness class. He was assigned to teach the class twice a week during the months he was on a flex-time schedule (the teaching issue). This regular assignment ceased, however, once he returned to a normal day shift schedule.

Finally, Obazuaye complains about a period of about three months when he was limited to only thirty minutes for lunch (the lunch issue). In October 2013, O'Leary sent an email to the entire nursing staff, outlining the break policy at ICRE-Roosevelt. The email stated that nurses were allowed a thirty-minute unpaid lunch break and two paid fifteen-minute breaks. The email stated that these breaks were to be taken separately rather than combined to create an hour-long break. Until this policy was revised in January 2014, Obazuaye took thirty-minute lunch breaks.

On August 26, 2014, Obazuaye filed a charge with the EEOC in which he claimed he had been discriminated against on the basis of his gender and national origin. He also claimed that when he complained of this discrimination he suffered retaliation, and that the discrimination and retaliation combined to create a hostile work environment. On September 8, 2014, the EEOC issued a right-to-sue letter to Obazuaye, and Obazuaye timely filed this law suit.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists,

the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, "a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Day* v. *N. Ind. Pub. Serv. Co.*, 987 F. Supp. 1105, 1109 (N.D. Ind. 1997); *see also Insolia* v. *Philip Morris, Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

### I. Disparate Treatment Claims

Obazuaye claims that DHS discriminated against him on the basis of gender and national origin with respect to the TA, teaching, report, and lunch issues in violation of Title VII. (Dkt. 45 at 4–11.)[6] "A plaintiff may prove employment discrimination under . . . Title VII . . . using either the direct method or indirect method." *Hutt* v. *AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014) (quotation omitted). Obazuaye offers no direct evidence of discrimination; thus the court

---

[6] In his response to DHS's motion for summary judgment Obazuaye abandons his allegation that the Soco promotion constituted discrimination against him, choosing instead to address it only in the context of his retaliation claim. Therefore, the court considers that claim waived. *See Roe-Midgett* v. *CC Servs., Inc.*, 512 F.3d 865, 876 (7th Cir. 2008) (holding that undeveloped argument constitutes waiver); *Palmer* v. *Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are abandoned).

5

focuses only on the indirect method. (*See* Dkt. 45 at 4.)

Under the indirect method, Obazuaye must first establish each element of a *prima facie* case of discrimination. He must show (1) he is a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) the employer treated similarly-situated employees outside the protected class more favorably. *See Bass* v. *Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014) (citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). If he can make such a showing the burden shifts to DHS "to assert a legitimate, nondiscriminatory reason for the challenged action." *Goodwin* v. *Bd. of Trs. of the Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006); *Paluck* v. *Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000). If DHS meets this burden, then Obazuaye must "present evidence that [DHS's] proffered reason is pretextual." *Vakharia* v. *Swedish Covenant Hosp.*, 190 F.3d 799, 806–07 (7th Cir. 1999). Pretext means "a lie, specifically a phony reason for some action." *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999) (quotation marks omitted). At all times, however, Obazuaye bears the "ultimate burden of persuasion." *St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

It is undisputed that Obazuaye is a member of a protected class—he is a Nigerian-American man—and that he performed his job satisfactorily. Thus, he must only present evidence that he suffered an adverse employment action and that another similarly-situated employee was more favorably treated than he.

"[N]ot everything that makes an employee unhappy is an actionable adverse action," *Conley* v. *Vill. of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000) (internal quotation marks omitted). It must be materially adverse. *Id.* An employment action is materially adverse if it "is a

6

significant change in the claimant's employment status such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Rhodes* v. *Ill. DOT*, 359 F.3d 498, 504 (7th Cir. 2004). The change must be something "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks omitted). The Seventh Circuit in *O'Neal* v. *City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004), articulated three general categories of actionable adverse employment actions concerning a person such as Obazuaye who remains employed:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

1. The TA Issue

Not being rotated into the TA to RN-II on the day shift on an equal basis with Simpson-Brown could be an adverse employment action,[7] thereby satisfying the third element of a *prima facie* case. But Obazuaye must still establish that he was treated less favorably than a similarly-situated individual who is not a member of his protected class.

Two individuals are similarly situated if they are directly comparable in "all material respects." *Patterson* v. *Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Obazuaye argues that he and Simpson-Brown were similarly situated because they were "equally qualified

---

[7] As DHS acknowledged in its reply brief, the claim rests on a loss of income from not receiving a higher position, even temporarily. (*See* Dkt. 40 at 7 n.2.) This renders it comparable to a denial of promotion, which is an adverse employment action. *Rhodes*, 359 F.3d at 504.

7

for the position in terms of grade (both were rated Grade 'A' by Central Management Services . . . )" (dkt. 45 at 5), and, therefore, Simpson-Brown was treated more favorably when she was preferentially offered the TA on day shift. Accepting that Obazuaye has thus made out a *prima facie* case of discrimination, the court moves to the question of whether DHS can put forth a non-discriminatory reason for its actions.

DHS responds that Obazuaye and Simpson-Brown were not similarly situated in one material respect: seniority, which is the basis on which both O'Leary and Davis testified TA positions were offered. (Dkt. 41 ¶ 15.) DHS additionally points to the governing union contract, which states that the employer will attempt to "distribute [TA] assignments . . . giving due consideration to seniority," (dkt. 46 ¶ 16; dkt. 41, ex. F at 16), to argue that it had a non-discriminatory reason for offering Simpson-Brown the TA first.

Obazuaye admits that Simpson-Brown had more seniority and that it would be proper to award the TA on those grounds. (Dkt. 46 ¶17; *see also* Dkt. 45 at 5.) He argues, however, that the court must ignore this proffered explanation because he was at one point given different reasons (that Simpson-Brown was "more qualified" and easier to understand), which he believes masked a discriminatory bias against him. (Dkt. 45 at 5.)

"[T]he existence of a genuine issue of triable fact with respect to some of the reasons for discharge proffered by the employer is of no consequence as long as at least one reason is uncontested. . . . [unless] the grounds that are offered are so intertwined or the pretextual ground for one of them so strong that a reasonable jury, hearing all the proffered grounds, could find for the plaintiff on the discrimination issue." *Adreani* v. *First Colonial Bankshares Corp.*, 154 F.3d 389, 399 (7th Cir. 1998) (internal citation omitted). Obazuaye does not dispute that it would have been proper for DHS to offer the TA to Simpson-Brown based on seniority, and he has no

evidence that at any other time, even on another shift, his employer did not apply seniority in assigning the TAs. Even if O'Leary believed Simpson-Brown more qualified and easier to understand than he, Obazuaye does not raise a genuine issue of material fact. There is no evidence that O'Leary did not honestly consider Simpson-Brown more qualified for the particular assignment. As a supervisor, she was entitled to make that judgment so long as it was an honest one.[8] This leaves only a reference to language ability. This single comment is not intertwined with seniority and is not strong enough to permit a reasonable jury to infer that, had Obazuaye been more understandable, and everything else had remained the same, he would have received the TAs on a rotational basis. *See Carson* v. *Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996) ("The central question in any employment-discrimination case is whether the employer would have taken the same action had the employee been of a different race (age, sex, religion, national origin, etc.) and everything else had remained the same.") Because Obazuaye cannot demonstrate that seniority was not the true reason for the TAs, DHS is entitled to summary judgment on this claim.

    2.    The Teaching Issue

Obazuaye acknowledges that he did not receive lower wages when he taught the health and wellness class or otherwise experience any negative consequences comparable to those identified in *O'Neal.* (Dkt. 46 ¶ 54.) In other words, Obazuaye provides no evidence that (1) the financial terms of his employment were diminished; (2) he was prevented from using his skills or experience such that his career was stunted; or (3) that the teaching assignment made the conditions of his employment humiliating, degrading, unsafe, or unhealthful, as opposed to a

---

[8] The two were equally ranked and equally qualified for purposes of establishing comparability, but a supervisor is not barred from making assignments based on an assessment of who would be better suited, so long as it is not pretextual, *i.e.*, masking a preference, as here, for women or against foreigners.

9

"mere inconvenience or an alteration of job responsibilities" that does not rise to the level of a materially adverse employment action. Instead, he relies solely on the unsupported allegation, found in his complaint, that these teaching duties were "unpopular work" that was "routinely refused by the predominantly female Filipino nursing staff." (Dkt. 48 ¶ 7.) Because this is not sufficient to establish that he suffered an adverse employment action, DHS is entitled to summary judgment on this claim.

3. The Report Issue

Obazuaye initially alleged that O'Leary "handled" the case management reports for the rest of the nurses on staff, while he had to complete his own. (Dkt. 19 ¶ 22.) His stance has since shifted, and now he agrees that all the nurses at ICRE-Roosevelt were responsible for contributing case management information to be compiled by O'Leary. (Dkt. 46 ¶ 46.) Obazuaye's only remaining complaint is that he was trained to enter his case management reports electronically, while other nurses filled out paper forms and, occasionally, O'Leary took the information orally. (*Id.* ¶ 47.)

This claim fails for much the same reasons that Obazuaye's claim about teaching the health and wellness classes did, for lack of any evidence that meets the standard of proof of an adverse employment action. Thus, DHS is entitled to summary judgment on this claim.

4. The Lunch Issue

Obazuaye asserts that he was instructed by O'Leary to stop combining his breaks, even while "it is apparent that the practice continued among [the other nurses] despite Ms. O'Leary's edict to [him]." (Dkt. 45 at 9.) The uncontested facts do not support Obazuaye's claim, even when the evidence is viewed in the light most favorable to him.

Obazuaye acknowledges (1) O'Leary sent an email outlining the lunch-break policy to

the entire ICRE-Roosevelt nursing staff (dkt. 46 ¶ 58); (2) he understood that the policy applied to all the nurses at ICRE-Roosevelt (*id.* ¶ 59); and (3) the superintendent of ICRE-Roosevelt believed that the nurses were following this policy. (*Id.* ¶ 60.) Obazuaye tries to create a dispute of fact by pointing to deposition testimony of Soco, who at the time was an RN-I on the night shift. Soco testified that she did not remember there being an issue around the length of lunch breaks and that the nurses on her shift regularly combined their breaks to take an hour-long lunch. (Dkt. 46, Ex. G at 19:4–17.) But Obazuaye does not point to any evidence that the policy was actually being differentially enforced against him, particularly on the day shift. Furthermore, Obazuaye points to no evidence that management was aware that any nurses were not following it, even on the night shift.[9] *See, e.g.*, *Day*, 987 F. Supp. at 1112 (holding that plaintiff had failed to assert a convincing adverse employment action because she could not show that policy was differentially enforced).

Thus, even if there were differences in compliance with the lunch-break rule between the day and night shifts, Obazuaye has no specific evidence that the policy was enforced only against him on his shift. For this reason, DHS is entitled to summary judgment on this claim.

## II.     Hostile Work-Environment Claim

Obazuaye claims discrimination based on a hostile work environment, asserting that the report, teaching, and lunch issues created a hostile work environment. (Dkt. 45 at 8–9.)[10]

---

[9] In fact, Soco testified that O'Leary was never there when they took their combined lunch breaks and there was no "clock punching or any record of combining" their breaks that would have alerted management to the fact that anyone was not complying. (Dkt. 46, Ex. G at 20:16–22:16.)

[10] DHS argues that Obazuaye failed to adequately plead hostile work environment in his Amended Complaint. (Dkt. 40 at 11 n.3.) DHS did not move for dismissal of the claim under Federal Rule of Civil Procedure 12(b)(6); therefore the argument is moot. Additionally, while it may generally be preferable for a plaintiff to allege discrimination by disparate treatment and discrimination based on hostile work environment as separate counts, Federal Rule of Civil Procedure 8 does not require it.

To survive summary judgment on his hostile work-environment claim, Obazuaye must provide sufficient evidence to demonstrate "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss* v. *Castro*, 816 F.3d 910, 920 (7th Cir. 2016). Courts evaluate hostile work environment claims under a "totality of the circumstances" approach, which requires considering factors such as frequency and severity of improper conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the employee's work performance. *Id.*

Obazuaye has not established that he was subjected to a hostile work environment. While he claims he perceived his environment to be hostile, he has provided no evidence that it was objectively so. As discussed above, under Seventh Circuit law the actions he complains of do not even qualify as discrimination, let alone reach the level of severe and pervasive. Being limited to thirty-minute lunch breaks, teaching a health and wellness class, and having to file case management reports electronically are neither physically threatening nor humiliating. And, rather than "interfering" with Obazuaye's job, each of these responsibilities or limitations was part of either his job description or the governing union contract. Finally, Obazuaye provides no evidence that the actions he complains of were motivated by bias or retaliatory animus.

Thus, Obazuaye cannot satisfy either of the first two elements of a hostile work environment claim, and DHS is entitled to summary judgment.

---

Obazuaye stated in both his EEOC charge and his Amended Complaint that he was subjected to a hostile work environment, so the court will consider the claim. (*See* Dkt. 19, Ex. A; *id.* ¶¶ 38, 56, 75.)

### III. Retaliation Claim

Obazuaye claims that DHS unlawfully retaliated against him for complaining about the discrimination he allegedly endured. Retaliation, like discrimination, may be proven using either the direct or indirect method. *Leonard* v. *E. Ill. Univ.*, 606 F.3d 428, 431 (7th Cir. 2010). Obazuaye acknowledges that he has no direct evidence of retaliation, but he maintains there is sufficient indirect evidence to support his claim. (Dkt. 45 at 11–12.)

Obazuaye must establish that he (1) engaged in statutorily protected activity; (2) suffered a subsequent adverse employment action; (3) was performing his job satisfactorily; and (4) was treated less favorably than a similarly situated employee who did not make a discrimination complaint. *See Leonard*, 606 F.3d at 431. Only if he can make such a showing does the burden then shift to DHS to provide a non-retaliatory explanation for its actions. *See Smart* v. *Ball State Univ.*, 89 F.3d 437, 439 (7th Cir. 1996).

Obazuaye limits his claim of retaliation to his allegation that he was wrongfully passed over for promotion to RN-II in favor of Soco.[11] This claim fails because Obazuaye has not provided sufficient evidence to show he engaged in protected activity prior to being passed over for the promotion.

---

[11] In his Amended Complaint, Obazuaye also alleged retaliation based on the teaching, case management report, and lunch issues, as well as alleging that O'Leary threatened him with the loss of his job. (Dkt. 19 ¶¶ 80-82.) DHS argues summary judgment is warranted on these claims because (1) these instances of alleged retaliation all occurred prior to Obazuaye's complaint of discrimination; and (2) Obazuaye fails to demonstrate that any of these acts are adverse employment actions. (Dkt. 40 at 13–15.) Obazuaye did not respond to DHS's arguments on these claims and, therefore, has waived them. *See Roe-Midgett*, 512 F.3d at 876 (holding that undeveloped argument constitutes waiver); *Palmer*, 327 F.3d at 597–98 (holding that claims not addressed in a summary judgment opposition brief are abandoned).

Moreover, in his Amended Complaint Obazuaye attributed all of the above acts to O'Leary, and nowhere in either parties' Rule 56.1 statements of uncontested facts does Obazuaye point to evidence in the record showing that he complained of discrimination by Ms. O'Leary prior to the allegedly retaliatory acts listed above. Thus, because Obazuaye failed to establish a *prima facie* case that these actions were retaliatory, summary judgment would be appropriate regardless of Obazuaye's waiver.

Filing an EEOC charge is not the only way to engage in protected activity under Title VII; an official complaint made to a plaintiff's employer may also be sufficient. *See Tomanovich* v. *City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Such a complaint, however, must indicate that the discrimination occurred because of a characteristic protected under Title VII. *See id.* ("Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class."); *Sitar* v. *Ind. DOT*, 344 F.3d 720, 727 (7th Cir. 2003); *Miller* v. *American Family Mut. Ins. Co.*, 203 F.3d 997, 1007–08 (7th Cir. 2000). "An employee can honestly believe [he] is the object of discrimination, but if [he] never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." *Miller*, 203 F.3d at 1008.

Obazuaye has provided no evidence from which a reasonable jury could infer that he complained to DHS in terms that made it clear he believed he was being discriminated against because of either his gender or his national origin. His complaint filed with the Office of the Inspector General complains only in general terms of O'Leary's being unfair to and discriminating against him and not following proper procedures. (Dkt. 46, Ex. K.) This is insufficient to put DHS on notice that Obazuaye believed he was being discriminated against on the basis of gender or national origin. Indeed, the DHS employee assigned to investigate his complaint, Sherrie Bridges, testified that she understood the discrimination allegation to be the same as his allegation, also in the complaint, that O'Leary had not put a "RON position"[12] up for all of ICRE to apply. (Dkt. 46, Ex. F at 31:17–21.)

---

[12] The parties do not explain what a "RON position" is, but the context makes clear that the term does not need to be defined for the court to find that it does not refer to a protected characteristic under Title VII.

Pointing to his January 2014 meeting with the Superintendent and the HR Specialist is unavailing as well. All of Obazuaye's communications with Manderino and Davis before and after the meeting refer to it as "labor-related" and do not mention discrimination as a topic that was discussed. (Dkt. 46 ¶¶ 69–70.) Additionally, the "agenda" for the meeting (Obazuaye states he brought it to the meeting), contains only generalized grievances. These include bullet points about "discrimination" related to "[l]imiting the staff's ability to enhance their full potential and skill at work" and "prejudice" in the "failure to post the RN 2 position [which] allowed prospective applicants to be denied of this opportunity." (Dkt. 46, Ex. S.) Even when viewed in the light most favorable to Obazuaye, the undisputed facts in the parties' Rule 56.1 statements describe a series of generalized complaints about "discrimination" related to the TA process and the failure to post the RN-II position, without any explicit description of discrimination based on either gender or national origin.

Because Obazuaye has not provided any evidence on which a reasonable jury could base a finding that he engaged in protected activity, his retaliation claim must fail.

## CONCLUSION AND ORDER

For the foregoing reasons, DHS's motion for summary judgment (dkt. 137) is granted. The Clerk is directed to enter judgment in favor of plaintiff. The case is terminated.

Date: March 29, 2017

_____
U.S. District Judge Joan H. Lefkow

15